IN THE DISTRICT COURT OF CANADIAN COUNTY
STATE OF OKLAHOMA

CANDY LYNN PARKER,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EARL HOWARD PARKER,
DECEASEDAND,

Plaintiff,

v.

UNION PACIFIC RAILROAD
COMPANY,

Defendant.

FILED
MARIE RAMSEY - HIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA

JAN 11 2013

BY_____
           DEPUTY

Case No. CJ-2013- 18

CASE ASSIGNED TO:
          GARY E. MILLER
JUDGE:_____

## PETITION

Plaintiff, for her causes of action against defendant states as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. At all times relevant hereto, plaintiff was and is a citizen and resident of Canadian County, Defendant Union Pacific Railroad Company (Union Pacific) is a Delaware corporation with its principal place of business in Omaha Nebraska.

2. Union Pacific is authorized to do business as a foreign for-profit Corporation in Oklahoma. Union Pacific may be served with process by and through its registered agent in Oklahoma: the Corporation Company, 735 First National Building, Oklahoma City, OK 73102.

3. At all times pertinent hereto, Union Pacific, by and through its officers and agents, dispatches trains into and through the County of Canadian, in the state of Oklahoma,



on a regular basis, and thus conducts business of operating a railroad company in the County of Stephens, in the State of Oklahoma.

4. At all times pertinent hereto, Union Pacific, by and through its officers and agents, was engaged in the business of operating a railroad company over rail that passes through the County of Canadian, in the State of Oklahoma.

5. At all times pertinent hereto, Union Pacific owned railroad track and operated a system of railways that runs through the County of Canadian, in the State of Oklahoma, and owned and controlled and maintained the railways and railroad crossings, including the crossing where the collision occurred involving Plaintiff on July 28, 2009.

6. In the course of operating its railroad company, Union Pacific directed its employees to operate its train that was involved in the collision, through the County of Canadian, in the State of Oklahoma, (hereinafter "the train") on the date of the collision.

7. At-all times pertinent hereto, all individual Defendants as well as all employees of Union Pacific were acting or failing to act both in their individual capacity and also as employees, servants, and agents of Union Pacific, within the scope of their employment and authority, and in the furtherance of the business of Defendant Union Pacific. All the acts, omissions, and negligence of the individual Defendants as well as all employees of Union Pacific are imputed to their employer, Union Pacific who is liable for such acts and omissions, as well as rendering the individual Defendants liable in their individual and personal capacities.

8. The collision in this case that is the subject of this civil action, occurred in the County of Canadian, in the State of Oklahoma, which is where the cause of action arose.

9. Jurisdiction and venue are proper in this Court. All allegations herein related to defendant railroad are based upon and should be interpreted to state causes of action seeking damages under state law for personal injury, death, or property damage, based upon one or more of the following:

   a. defendant railroad has failed to comply with the Federal standard of care established by a regulations or orders issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. Section 20106;

   b. defendant railroad has failed to comply with its own plans, rules, or standards that defendant railroad created pursuant to a regulation or order issued by either of the Secretaries; or

   c. defendant railroad has failed to comply with State laws, regulations, and orders that are not incompatible with subsection (a)(2) of 49 U.S.C. Section 20106.

10. All allegations set forth in this Petition are based upon information and belief.

11. All allegations set forth in each of the paragraphs in this Petition are incorporated by reference into each of the other sections and paragraphs contained in this Petition, as if fully set forth therein.

## II. FACTS AND ALLEGATIONS

12. On July 28, 2009, Plaintiff's decedent was lawfully and reasonably operating a motor vehicle on a public road known as Southwest 59th Street in Canadian County, Oklahoma. On March 19, 2008 Plaintiff's decedent was traveling westbound and defendant's train was traveling southbound.

13. As Mr. Howard's motor vehicle traversed the crossing, a train owned and operated by Union Pacific, on tracks owned and maintained by Union Pacific, struck the motor

3

vehicle being operated by Mr. Howard. As a result, Mr. Howard suffered injury and died.

14. All references to the "accident" or "collision" herein refer to the collision Plaintiffs were injured herein, on March 19, 2009.

15. The locomotive engineer responsible for operating and controlling the locomotive on the train that struck the Plaintiff's vehicle was an employee of Union Pacific.

16. The conductor responsible for operating and controlling the locomotive on the train that struck the Plaintiff's vehicle was an employee of Union Pacific.

17. At the time of the collision, the crossing was not equipped with flashing lights, nor automatic gates to warn approaching motor vehicles of approaching trains, and the approach to the crossing was not compliant with the MUTCD (Manual of Uniform Traffic Control Devices).

### III. General Liability Issues

18.   Defendant has a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case Defendant breached its duty by failing to exercise reasonable care. As a direct proximate result of the Defendant's breach of this duty, plaintiffs suffered damages, as hereafter alleged. All acts or omissions of Defendants constitute negligence, gross negligence, willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the motoring public.

### IV. Negligence and Fault of Defendant Railroad

19. The public has come to rely upon the following three basic components as essential to railroad crossing safety: a) reasonable and timely audible warning of an approaching train, b) reasonable and timely visual warning of an approaching train, and c) a safe place to cross the tracks. Defendant railroad has actively worked to instill these fundamental beliefs into the motoring public through its utilization of the Operation Lifesaver program. In this case none of these three basic components were provided to the driver prior to the accident

20. Defendant railroad has a duty to exercise reasonable care in the operation of its trains so as to avoid injuring or killing members of the public. In this case, Defendant railroad breached its duty by the failure to exercise reasonable care in the operation of trains over this crossing, failure to properly maintain the crossing environment and failure to provide adequate warning of the approaching train.

## Inadequate Audible Warning

21. Defendant railroad and its crew breached their duty to give reasonable and timely warning of the train's approach by failing to give a proper audible warning.

22. Defendant railroad and its crew breached their duty to ensure the horn on the locomotive involved in the accident complied with the audibility requirements of 49 CFR Section 229.129. Defendant railroad has no evidence that the train horn complied with 49 C.F.R. Section 229.129 at the time of this accident. In fact, the horn did not provide sufficient audible warning of the train's approach prior to this accident, and was apparently not even sounded.

23. Defendant railroad and its crew breached their duty to ensure that the train horn was properly sounded to warn of the train's approach to the railroad crossing, to be

"properly sounded" the horn must not only be loud enough, it must be blown in the correct sequence and for a sufficient duration. The horn was not properly sounded.

24. The audible warning system on the locomotive involved in this accident was made up (upon information and belief) of a horn and a pedestrian bell. Defendant railroad has known the inherent problems with this type of train-mounted audible warning systems for over 25 years and done nothing to resolve those problems or otherwise compensate for the safety deficiencies caused by those problems. Defendant railroad has failed to advise or instruct its employees about the deficiencies in train mounted audible warning systems and to recognize the safety issues caused by those problems. Defendant railroad has negligently failed to properly instruct its crews concerning proper horn activation, and limitations of the audible warning system.

25. Defendant railroad has knowledge that its crews do not properly sound the horn consistently, but has chosen not to investigate or punish horn violations, monitor for insufficient horn activation or otherwise attempt to accurately document these violations. Instead, Defendant railroad has intentionally misrepresented the extent of the problem by publishing false and misleading information concerning the nature and extent of the problem. As a result, its train crews are aware that the railroad condones horn violations. It is the routine practice of Defendant railroad to ignore violations of horn rules at grade crossings. Accordingly, Defendant railroad breached its duties.

26. The investigation of this accident has revealed no evidence that the driver of the motor vehicle was provided an adequate audible warning from the train prior to the accident. The driver was physically unable to hear the train horn in sufficient time to

react and avoid the accident, and no fault should be assessed to the driver for not hearing and responding to such an inaudible warning.

### Inadequate Visual Warning

27. Defendant railroad breached its duty to give reasonable and timely warning of the train's approach by failing to provide for an adequate visual warning.

28. Visual warning of the train's approach to this crossing requires the illumination of headlights and auxiliary lights in compliance with 49 C.F.R. §229.125. It also requires unimpaired sight distances for motorists to see those headlights and auxiliary lights.

29. The crossing where this accident occurred had inadequate approach sight distances to provide an approaching driver with an unimpaired sight distance down the roadway to determine the location of the crossing, its condition, the type of warning devices and whether it is or soon will be occupied by a train. This condition of an inadequate approach sight distance should have been reported by the Defendant railroad and addressed by a cooperative effort of the railroad and the local road authority failed to take any reasonable steps to provide motorists with an unimpaired approach sight distance or to warn of the obstruction. The lack of an unimpaired approach sight distance was one of the contributing factors that caused this accident. Accordingly, Defendant railroad and the local road authority have breached their duty to provide a reasonably safe crossing.

30. Defendant railroad failed to clear visibility obstructions from its own right of way to provide motorists with an adequate view down the track in both directions. The lack of adequate sight distance down the right of way was one of the contributing factors that

caused this accident. Accordingly, Defendant railroad has breached its duty to provide a reasonably safe crossing.

31. Defendant railroad has known that the areas surrounding this crossing and other similarly situated crossings were not adequately clear of brush, trees, debris and other visual obstructions and visual clutter. These obstructions to visibility create safety hazards for motorists using the crossing. Defendant railroad has failed to properly train its employees to recognize safety hazards caused by visibility obstructions. Because of this inadequate training, the obvious safety hazards at this crossing were unreported prior to this accident.

32. Defendant railroad knows that safety hazards caused by visibility obstructions are common and widespread, but has chosen to ignore these safety hazards. Instead of correcting the safety hazards, Defendant railroad has intentionally misrepresented the extent of the problem and refused to acknowledge its own responsibilities for maintaining unimpaired sight distances. As a result, its employees are aware that the railroad does not want them to report safety hazards caused by visibility obstructions. It is the routine practice of Defendant railroad to condone its employee's failure to report safety hazards caused by visibility obstructions at grade crossings.

## Train Operations

33. The duty to exercise reasonable care in the operation of trains, includes the duty to keep a proper lookout. The crew on the train involved in this accident failed to keep a proper lookout prior to the accident.

8

34.     As specified herein, there were hazardous conditions at this grade crossing that existed for an extended period of time before this accident. Those conditions have been repeatedly ignored by train crews, maintenance crews, and other employees of the Defendant railroad. It is the routine practice of Defendant railroad to ignore the existence of hazardous conditions at grade crossings and to dissuade documentation of those conditions. As a result, its employees, including train crews, are aware that the railroad condones the existence of these hazardous conditions.

35.     The circumstances surrounding this accident suggest that the train was traveling at a speed in excess of the track speed limit, train speed limits, car speed restrictions, locomotive speed restrictions and/or other speed limitations at the time of the accident. It is believed that discovery will establish violation of speed restrictions contained in 49 C.F.R. §213, §234, and §229, other similar federal regulations, the General Code of Operating Rules, or other rules of defendant railroad. This train was also traveling too fast for an essentially local safety hazard and a specific local hazard.

36.     The area in and around this crossing should have been protected by a slow order for rail traffic traversing this crossing. If such a slow order was in effect for this section of track, then it was violated by the train involved in this accident. If such a slow order was not in effect for this section of track then Defendant railroad wrongfully failed to issue such a slow order. In either event, the failure of the train involved in this accident to slow for the unsafe conditions at this crossing was a contributing factor to this accident.

37.     The crew breached their duty to slow or stop the train to avoid "a specific, individual hazard" at this crossing prior to the accident. They also failed to approach the crossing prepared to stop due to "an essentially local safety hazard." If the crew would

have been prepared to stop, slowed the train and/or applied the brakes in a timely fashion they could have avoided the collision or changed the dynamic of the collision to the extent that plaintiff's damages from the collision could have been significantly reduced or eliminated. At the time of this accident the conditions at this crossing prior to the accident created "an essentially local safety hazard." However, Defendant railroad has negligently failed to recognize essentially local safety hazards, failed to instruct train crews and other employees how to identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially local safety hazards and failed to warn of their existence. Accordingly, the crew on the train did nothing to slow the train, prepare to slow the train or otherwise account for the local safety hazard at this crossing. The existence of an unidentified and unaccounted for local safety hazard was one of the contributing factors that caused this accident.

38. Defendant railroad has also failed to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow or stop the train for safety hazards at railroad crossings. Defendant railroad knows the risks to the motoring public created by its failure to instruct its train crews about the duty to slow or stop the train to avoid safety hazards at railroad crossings, but has elected to not instruct its crews about these duties. Because of this inadequate training, the crew approached this crossing oblivious to the existing safety hazards at this crossing. The crew's lack of training and preparedness was one of the contributing factors that caused this accident.

39. Defendant railroad has condoned its employees' failure to modify train operations to account for hazards at railroad crossings and has adopted a routine practice of ignoring

hazards to the motoring public. This intentional indifference to the safety of plaintiff and the motoring public was one of the contributing factors that caused this accident.

### Failure to Inspect and Repair Unsafe Crossing

40. The crossing where this accident occurred is part of the general railroad system of transportation. Regulations specify many duties Defendant railroad have in connection with the crossing, track and surrounding appurtenances. Those duties include, but are not limited to the following:

> a) The duty to inspect the crossing, track and surrounding appurtenances pursuant to 49 CFR §213.233, §213.237, §213.233 and associated sections:
>
> b) The duty to designate qualified persons to inspect track for defects pursuant to 49 C.F.R. 213.7(b).
>
> c) The duty to immediately prepare and maintain a record of each inspection of its track to specify the track inspected, date of inspection, location and nature of any defects and identifying the appropriate remedial for such defects all pursuant to 49 C.F.R 213.241 and its own rules.
>
> d) The duty to immediately bring its track into compliance with track safety standards or halt operations over that track pursuant to 49 C.F.R. 213.5.

41. The hazardous track and crossing conditions described herein were not properly identified, documented, reported nor repaired by Defendant railroad and its employees. Instead these hazardous conditions were allowed to exist as a direct violation of the code of Federal Regulations and the railroads' own rules created pursuant to such regulations. Defendant railroad knew or should have known that the existence of these hazardous conditions created an unsafe crossing in violation these rules and regulations.

42. Many factors have combined to render this crossing unsafe for motorists. Identified below are some but not all of the factors that have combined to render this

crossing unsafe. This combination of track conditions required remedial action to allow for safe operations over this crossing by motorists and railroad traffic. If defendants would have properly conducted track inspections at this crossing, the hazardous conditions at this crossing would have been identified and remedial action taken long before this accident, thereby preventing this accident.

### Specific Unsafe Crossing Conditions

43. One set of characteristics that have combined to render this crossing unsafe are the visibility obstructions, discussed above in the section on "Inadequate Visual Warning." Those obstructions create impairment to view and distractions to the attention of a motorist at this crossing, making this crossing more complex and hazardous.

44. The materials used in the crossing surface and condition of those materials were incompatible with the surrounding roadway surface and that incompatibility was one of the characteristics of the crossing contributing to the over all unsafe condition of the crossing.

45. The rough and unstable condition of the crossing surface was one of the characteristics of the crossing contributing to the over all unsafe condition of the crossing.

### Failure to Report Unsafe Conditions

46. Defendant Railroad had actual or constructive knowledge that all of the above-mentioned characteristics and conditions and hazards make crossings more complex and more hazardous for motorists. Instead of correcting or accommodating for these hazardous characteristics and conditions, Defendants have elected to ignore their existence. As a result, their employees are aware that the railroad does not want them to

report hazardous conditions that are known to make crossings like this unsafe. It is the routine practice of Defendant Railroad to condone its employee's failure to report these unsafe crossing characteristics and conditions. Defendant railroad knew, or should have known, that this failure to report and address unsafe crossing characteristics and conditions, would result in unnecessary loss of life and injuries.

47.     Defendant railroad's failure to require reporting of unsafe crossing conditions is a violation of its own General Code of Operating Rules that have been filed with the Federal Railroad Administration as a prerequisite to operate as a railroad in the United States. The failure to require reporting of these unsafe crossing conditions is also a violation of the federal regulations that require Defendant railroad to instruct its employees to comply with its operating rules.

### Signs, Signals and Markings

48.     Defendant railroad must work with the state and local road authorities to evaluate crossing conditions and characteristics. Defendant railroad also knows it must work jointly with the state and local road authorities to maintain a reasonably safe crossing that will allow for reasonably safe passage across its tracks. However, Defendant railroad has failed to work jointly with the State and the local road authorities by failing to share necessary information, failing to establish an open line of communication and failing to engage in any effort to evaluate crossing conditions and characteristics at this crossing. Instead, Defendant railroad has elected to ignore the hazards caused by these conditions and characteristics. Defendant railroad knows that it has superior knowledge and opportunity to evaluate crossings, but has elected not to utilize its superior knowledge,

opportunity, or any of its own resources to improve crossing safety. Accordingly, hazardous conditions at the crossing were ignored and the crossing was not adequately protected with signal devices to provide the reasonable motorist with sufficient information for reasonably safe passage over the crossing.

49.   All railroad crossing signage, signals, markings, and related improvements must be in compliance with the Manual on Uniform Traffic Control Devices (MUTCD). The MUTCD has been adopted as the standard for traffic devices at this crossing and throughout the state, but the devices at this crossing were not in compliance with the MUTCD at the time of this accident. Failure on the part of Defendant railroad and ODOT to comply with MUTCD standards was one of the characteristics of the crossing that contributed to the over all unsafe condition of the crossing.

50.   Defendant railroad knows that lights and gates are affordable, cost effective guarding devices that have proven to be 90% effective. Despite this knowledge Defendant railroad has done nothing to promote the usage of lights and gates or other cost effective active warning devices. Instead, Defendant railroad has engaged in conduct that has resulted in fewer installations of these proven safety devices at crossings. Defendant railroad has refused to supplement the federal funding of active warning devices with any meaningful safety program of its own. Defendant railroad has delayed the installation of these proven safety devices, engages in conduct that unnecessarily increases the costs of these proven safety devices and has diverted funds that should have been used to install these devices. As a result, the crossing did not have lights and gates or other cost effective active warning devices, which would have prevented this accident.

### Training, Instruction and Management

51. Pursuant to 49 C.F.R. § 217.1 & § 218.11, Defendant railroad is required to instruct its employees concerning proper operating practices and operating rules. These regulations require proper instruction, supervision and monitoring of employees to protect the public from unsafe practices and conditions. Defendant railroad has failed to appropriately instruct, supervise and monitor its employees in that regard.

52. Defendant railroad has intentionally instructed its crews and other employees that there is nothing the railroad can do to prevent accidents or reduce risks to the public despite the knowledge that such an assertion is false. Defendant railroad's failure to properly instruct its employees concerning public safety contributed to the accident in this case.

53. Defendant railroad knows that it is suppose to utilize a systems approach to provide a comprehensive method for addressing safety issues at crossings, but has refused to implement any system safety program for crossing safety.[1] Defendant railroad has chosen to ignore hazards that would be readily identified in a system safety analysis. Defendant railroad has purposely neglected training its personnel to identify and correct unsafe conditions for the purpose of saving money on maintenance and capital improvements. Instead, defendant railroad has launched a public relations campaign designed to undermine the entire concept of system safety for crossings.

### Intentional Disregard for Public Safety

---

[1] "The systems approach provides a comprehensive method for addressing safety and operations at crossings." USDOT Railroad-Highway Grade Crossing Handbook, 2nd Ed., pg. 85. Interim system safety plans were required of certain commuter railroads "and any other entities (e.g., freight railroads with affected passenger service on their lines) whose actions are necessary to effectuate this order." Interim system safety plans were to include: "(v) a review of the hazards posed to passengers in the forward car by vehicles using highway-rail grade crossing." FRA Emergency Order 20 dated Feb 20, 1996, at pg 2. See also, RR Casemap Library, Fact Chronology, System Safety.

54.     Defendant railroad's customs, policies and conduct in all of the aforementioned allegations were willful and wanton, and demonstrated a reckless disregard for the safety of the motoring public. Defendant railroad has intentionally elected to disregard legal duties owed to the motoring public.

55.     Defendant railroad has demonstrated a pattern of conduct by failing to enforce its own policies and procedures as well as federal and state laws providing for the safe operation of trains. This pattern of conduct has condoned and ratified the conduct of its employees and agents to disregard duties owed to the motoring public.

56.     Defendant railroad has made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from car train collisions than to properly maintain its crossing, upgrade its crossings and properly train its employees on issues involving crossing safety. Defendant railroad's conduct as set forth herein constitutes malice.

## V. BREACH OF DUTIES / CAUSATION

57.     All Defendant's conduct, omissions, negligence and breach of duties as set forth herein (as well as their employees) all combined to form the proximate and actual cause of the collision in this matter. As a result of such conduct, omissions, negligence, breach of duties, as well as their intentional misconduct, Plaintiffs suffered damages as set forth herein.

## DAMAGES

58.     The acts and omissions of defendants give rise to punitive damages under Oklahoma law, as they were committed in reckless disregard of the rights of others and/or were committed intentionally and with malice toward others.

59. As a direct and proximate result of the negligent, willful, wanton and intentional conduct or omissions of Defendant and its employees as set forth herein, Plaintiff has been damaged and injured. Plaintiffs have incurred expenses and sustained damages, property loss, mental anguish, suffering, and numerous other substantial damages, both pecuniary and non-pecuniary.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant for damages as a result of the negligent, willful, wanton and reckless disregard for the safety of the motoring public by the Defendant as described above in an amount in excess of $75,000.00. Plaintiffs further request the costs of suit, reasonable attorney's fees and whatever further relief as is just and equitable.

Respectfully submitted:

Roy Dickinson OBA #13266
1408 Winding Ridge Rd.
Norman, OK 73072
(405) 321-3288
(405) 973-2204 (fax)

ATTORNEY'S LIEN CLAIMED

Roy Dickinson